**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PROMIER PRODUCTS INC.,**<br>*Plaintiff,*<br>**V.**<br>**GEAROZ, ET AL.,**<br>*Defendants* | **CIVIL ACTION NO. 2:25-CV-497**<br>**FILED UNDER SEAL** |

**EMERGENCY MOTION TO MODIFY**
**TEMPORARY RESTRAINING ORDER**

Defendants - (1) Ningbo Lecheng Network Technology Company Limited d/b/a LECHENG Tech, (2) yu yao shi yi he mao yi you xian gong si a/b/a YIHE International Trade, (3) Yuyao KeRun Technology Limited d/b/a KERUN Technology-US, (4) Ningbo Hanyue Technology Company Limited d/a Rufykiri Direct-US, (5) Yuyao Youye Technology Limited d/b/a YOUYE Technology-US, and (6) Ningbo IkeeRuic Technology Limited Company d/b/a IkeeRuic Direct-US (collectively, the "Ningbo Defendants" or "Defendants") - by and through their undersigned counsel, and respectfully request the Court to modify the temporary restraining order (Dkt. No. 17) issued against their respective businesses because the TRO did not maintain the *status quo* but rather caused them immediate economic harm, even before the Ningbo Defendants were properly served, and the severe damage will continue during the pendency of Plaintiff's motion for a preliminary injunction.

**BACKGROUND AND PROCEDURAL HISTORY**

On April 15, 2025, Plaintiff filed a lawsuit against 153 defendants under seal, in which Plaintiff claimed false advertising under 15 U.S.C. § 1125(a) and unfair competition under Pennsylvania common law. On the same date, Plaintiff also filed an *ex parte* motion for, inter

alias, a temporary restraining order and an order restraining all defendants' assets and storefronts ("TRO Motion"). Along with the TRO Motion, Plaintiff submitted a proposed TRO order requesting that "any Internet marketplace who is provided with notice of this Order … shall immediately cease fulfillment of and sequester Defendants' inventory assets … during pendency of this action" and that "all online marketplaces … shall upon receipt of this Order, suspend, block, tombstone, and/or delete any product listings identified by the Plaintiff as setting forth literally false material claim…" ("Removal Request") All of the Ningbo Defendants maintain storefronts on the Amazon e-commerce platform, and Amazon is their primary means of conducting sales in the United States. On the date the TRO was granted, Amazon was holding their substantial inventory and revenues received from buyers for the past two to four weeks.

The Court granted the entire *ex parte* TRO Application on May 8, 2025, and as a result of the Removal Request, certain products of Defendants were immediately removed from their Amazon platform before Defendants had a chance to take any remedial actions to verify and/or correct the allegedly misleading statements. Since the imposition of the TRO, Defendants have all suffered great economic loss, a harm grossly disproportionate to minor sales puffery asserted by Plaintiff – Defedants' description of Lumen output that allegedly deviated from Plaintiff's test report.

On May 20, 2025, Defendants received summons from Plaintiff via email, which also contained a link for Defendants to access copies of papers for the lawsuit. On May 24, 2025, Defendants, in a good faith effort to resolve this dispute asked if Plaintiff would agree to narrow the scope of TRO to stop or narrow the economic damage to the Ningbo Defendants. As of this filing, Plaintiff has not responded this request.

The Ningbo Defendants are all sellers of flashlights or other portable lighting devices. Before the TRO took effect, their combined weekly sales of the Ningbo Defendants was

approximately $80,000. Joint Declaration of Ningbo Defendants ¶13. Due to the breath and detail of the TRO, Amazon has temporarily shut down the Ningbo Defendant's storefronts depriving these Defendants of access to all sales revenue, even those generated from listings unrelated to this lawsuit. Joint Declaration of Ningbo Defendants ¶10. In effect, the issuance of *ex parte* TRO has not maintained the *status quo* but has unintentionally eliminated the Ningbo Defendants as Plaintiff's business competitors, while causing them a continuing loss of sales and damaging their reputation for selling high-quality goods.

## LEGAL STANDARD

Courts have broad discretion to grant injunctions to prevent violations of false advertising, according to principles of equity and upon such terms as the courts may deem reasonable. 15 U.S.C. § 1116. The ordinary purpose of a TRO is to maintain the *status quo*. *Hope v. Warden York County Prison*, 956 F.3d 156, 160 (3rd Cir. 2020). The Third Circuit has emphasized that district courts should consider ordering "the narrowest remedy possible to protect the public from misleading product names and advertising." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 599 (3rd Cir. 2002). Injunctions to enjoin sales, irrespective of whether the sale of end product of the alleged false statement, is overly broad and beyond the permissible limits. *U.S. v. Vitasafe Corp.*, 345 F.2d 864, 870-71 (3rd Cir.1965).

In false advertising cases, courts typically grant injunctions narrowly tailored to address specific false claims rather than requiring delisting of all products. See e.g., *GlaxoSmithKline LLC v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 484 F.Supp.3d 207, 213 (E.D. Penn. 2020) (enjoining the defendant from using certain unsupported marketing claims but did not require delisting of all products); *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 207 (3rd Cir. 2014) (affirming district court's decision requiring defendant to place stickers over challenged advertising claims and remove hang tags with the false claims, without

requiring the removal of all products). Courts were generally satisfied by defendants' removal of the disputed statement and a certification to the court that defendants will not make similar statements in the future. *See e.g. Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205, 218 (3rd Cir. 2014) (finding no irreparable harm when defendant certified to the court that he would not make the statement in the future and had removed the statement from Internet).

## ARGUMENT

### A. The Removal Request in Place Is Not Narrowly Tailored to Address Specific False Claims

In the TRO Motion, Plaintiff completely failed to address why the Removal Request is a reasonable and narrowest possible measure to protect the public from the allegedly misleading statements provided by Defendants. Plaintiff only stated, in a conclusory manner, that such an order is "necessary to prevent defendants from continuing to sell falsely advertised products" in its Memorandum of Law in Support of the TRO Motion ("Plaintiff's TRO Memo").

Plaintiff did not even cite a single false advertising case to support its position that the Removal Request is a justified and reasonable measure to prevent consumer harm as a result of the alleged false advertising. Instead, in Plaintiff's TRO Memo, Plaintiff cited two non-binding authorities outside the realm of false advertising to support its position, both of which are irrelevant and inapplicable to this case.

The first case that Plaintiff relied on, *Gucci Am., Inc. v. Weixing Li*, is a Second Circuit trademark infringement case where defendants sold counterfeit versions of plaintiff's products on the Internet as if they were authentic products. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 125 (2d Cir. 2014). A complete delisting of the infringing products was a reasonable and necessary measure in that situation because the selling of such products was the violation per se. In this case, however, the sales of Defendants' products did not give rise to Plaintiff's false advertising claims, but only certain language in the product description page on Defendants'

Amazon stores is subject to this dispute. The other case cited by Plaintiff is a domain name dispute before the District Court for the Southern District of New York, where defendants improperly registered domain names using plaintiff's federally registered trademarks and sold counterfeits on these websites. *AW Licensing, LLC v. Bao*, No. 15-cv-1373, 2015 U.S. Dist.. LEXIS 177101, at 3 (S.D.N.Y. Apr. 1, 2015). Enjoining defendants' use of these domain names to sell and distribute counterfeit is also a reasonable injunctive relief specifically tailored to the infringing acts in that case because defendants' domain name registrations per se are infringing. *Id.*

Nevertheless, neither case cited by Plaintiff involves the false advertising claim under 17 U.S.C. 1125(a)(1)(B) or common law unfair competition. Unlike the two cited cases, Defendants' products sales and domain name do not constitute any violation, but only the product description on Defendants' Amazon storefronts is subject to dispute here, which can be easily amended and detached from Defendants' products. A complete removal of Defendants' products at issue and sales prohibition is grossly disproportionate, contrary to the Third Circuit ruling in *U.S. v. Vitasafe Corp* that specifically denied this type of injunction in false advertising claims.

In light of the above, the Removal Request is disproportionate and unreasonable, not specifically tailored to any harm alleged by Plaintiff.

### B. Any Further Delay Would Unjustly Cause Irreparable Harm to Defendant and Negative Public Consequences

The legal standard employed for a temporary restraining order is the same as one for permanent injunction. *Cornette v. Graver*, 473 F.Supp.3d 437, 457 (W. D. Pa. 2020). The Lanham Act has no presumption of irreparable harm, while the presumption of irreparable harm in the Trademark Modernization Act of 2020 is limited to trademark infringement cases, not extended to false adverting claims. *See id.* at 475. Courts must balance competing claims of

injury and regard for public consequences in employing the extraordinary remedy of injunction. *Ferring Pharmaceuticals, Inc*., 765 F.3d at 217.

Defendants' stores and products have been restrained since early May 2025. As a result, Defendants' liquidity, sales income, and ability to continue operations have been stymied. In fact, the removed products are not inherently defective products that could not meet consumers' expectation of ordinary use. A complete prohibition against Ningbo Defendants from selling lawful and non-defective products is not only prejudicial to Ningbo Defendants but also reduces consumer choices of flashlights, when a simple correction of product description could have addressed any harm alleged by consumers. Irreparable harm, including an estimated financial loss of $80,000 per week will continue to be inflicted on the Ningbo Defendants if the onerous injunction is left intact, while Plaintiff will enjoy an unfair advantage during the imposition of such injunction, as its key competitors are prohibiting from offering competing products.

The Ningbo Defendants also have other meritorious defense to present and will present arguments to show why the whole TRO and preliminary injunction sought by Plaintiff should be denied entirely. But given Defendants' urgent demand for an immediate relief, Defendants' will be satisfied if this Court could modify the Removal Request portion of the injunction, on the sole basis Plaintiff has not alleged any likely harm that would justify such an extraordinary relief, especially considering the irreparable injury harm to Defendants and general consumers.

## CONCLUSION

The Removal Request in the TRO currently in effect should be modified to preserve the *status quo* and restore equity. Therefore, the Removal Request should be stricken from the TRO order or modified to a specific demand to remove the allegedly misleading or false statements on Defendants' website.

**WHEREFORE,** the Ningbo Defendants jointly request this Court enter an order granting their Emergency Motion to Modify Temporary Restraining Order and for any further relief the Court deems appropriate.

Date: May 27, 2025

/s/ Ge (Linda) Lei
Ge (Linda) Lei
Getech Law LLC
203 N. LaSalle St., Suite 2100,
Chicago, IL 60601
Attorney No. 6313341
Linda.lei@getechlaw.com
312-888-6633

/s/ Shaoyi Che
Shaoyi Che, Esq.
*Pro Hac Vice*
YoungZeal LLP
9355 John W. Elliott Dr, Ste 25555,
Frisco, TX 75033
Tel: (717) 440 3382
Che@yzlaw.com

*ATTORNEYS FOR DEFENDANTS*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of May 2025, I electronically filed the foregoing document in the U.S. District Court, Western District of Pennsylvania, via email per sealed case procedures.

By:/s/ Ge (Linda) Lei