IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PROMIER PRODUCTS INC., | |
| *Plaintiff,* | CIVIL ACTION NO. 2:25-CV-497 |
| V. | FILED UNDER SEAL |
| GEAROZ, ET AL., | |
| *Defendants* | |

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION TO MODIFY TEMPORARY RESTRAINING ORDER**

Defendants - (1) Ningbo Lecheng Network Technology Company Limited d/b/a LECHENG Tech, (2) yu yao shi yi he mao yi you xian gong si a/b/a YIHE International Trade, (3) Yuyao KeRun Technology Limited d/b/a KERUN Technology-US, Ningbo Hanyue Technology Company Limited d/a Rufykiri Direct-US, (4) Yuyao Youye Technology Limited d/b/a YOUYE Technology-US, (5) Ningbo IkeeRuic Technology Limited Company d/b/a IkeeRuic Direct-US, and (6) Ningbo IkeeRuic Technology Limited Company d/b/a IkeeRuic Direct-US (collectively, the "Defendants") - by and through their undersigned counsel, submits this Reply in Support of Defendants' Emergency Motion to Modify Temporary Restraining Order.

### INTRODUCTION

On April 15, 2025, Plaintiff requested a sweeping injunctive relief against Defendants and others e-commerce sellers of flashlights or headlights ("Accused Products") based on allegations of false advertising and unfair competition. These allegations stem from certain language these sellers used in their product descriptions regarding lumen output of the Accused Products ("Disputed Statements").

The Temporary Restraining Order ("TRO"), granted on and effective since May 8, 2025, required, *inter alias*, that "any Internet marketplace who is provided with notice of this

1

Order … shall immediately cease fulfillment of and sequester Defendants' inventory assets … during pendency of this action" and that "all online marketplaces … shall upon receipt of this Order, suspend, block, tombstone, and/or delete any product listings identified by the Plaintiff as setting forth literally false material claim…" (the "Removal Request"). The Removal Request is much broader than and disproportionate to the alleged harms resulting from the Disputed Statements.

To seek a quick relief from the excessive injunction, Defendant, on May 27, 2025, jointly submitted an Emergency Motion to Modify TRO (Dkt. No. 36, "Emergency Motion"), in which Defendants specifically challenge the Removal Request. Along with the Emergency Motion, Defendants submitted a certificate showing that each Defendant had deleted the Disputed Statements from each Accused Product.

Plaintiff, in an attempt to preserve the challenged Removal Request, filed a Response to the Emergency Motion (the "Response"), in which Plaintiff conjecturally challenged Defendants' motivation and rationale for filing this Emergency Motion but failed to elaborate on why Defendants' modification request was unreasonable in light of the voluntary deletion of Disputed Statements. The Response also mischaracterizes the applicable legal standard and disregards the material fact that Defendants had deleted all Disputed Statements,

Defendants hereby present the following arguments to reiterate its request for relief and rebut mischaracterization of facts and laws in the Response.

**ARGUMENT**

**A. The Changed Circumstances Requires an Immediate Modification to Prevent Injustice.**

As conceded by Plaintiff, "[i]n the context of false advertising, the courts have considerable discretion in framing injunctions, but the restraints should be narrowly tailored to address the speech that is likely to deceive consumers and harm the plaintiff." Dkt. No.50 at

2

*3. Defendants have fully explained why the Removal Request was not specifically tailored to address the Disputed Statements in the Emergency Motion. Dkt. No. 36 at 4 – *Argument A. The Removal Request in Place Is Not Narrowly Tailored to Address Specific False Claims*.

Nevertheless, Plaintiff cited two Third Circuit cases in the Response out of context, attempting to limit this Court's discretion in modifying injunctive relief and to impose higher requirements on Defendants. Dkt.No.50 at 2. Plaintiff attempted to impose on Defendants the higher legal standard set forth in *Franklin Twp. Sewerage Auth. v. Middlesex Cnty. Utilities Auth.*, 787 F.2d 117, 121 (3d Cir. 1986), which requires a showing of changed circumstances, but the requirement applies to a motion to dissolve injunction in *Franklin Twp*, not a motion to modify a portion of the injunction. Similarly, Plaintiff mischaracterized three grounds mentioned in *Max's Seafood Café v. Quinteros* as grounds to demonstrate "such changed circumstances exist," but these are grounds for filing motion for reconsideration. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999) ("a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.") It is wholly unreasonable and inappropriate for Plaintiff to misuse these precedents in an attempt to impose higher legal standard on Defendants' Emergency Motion.

Even applying the heightened standard proposed by Plaintiff, Defendants have demonstrated changed circumstances that would justify immediate reinstatement of the removed listings – <u>Defendants had all deleted the Disputed Statements</u>. Dkt.No.36 – Exhibit 3. Contrary to Plaintiff's misinterpretation, Defendants did not require the Court to "parse through each allegedly false assertion to determine if the removal or alteration of a word or phrase would render the assertion true," given that they had all voluntarily removed all Disputed

3

Statements, which prevents dissemination of any allegedly false statements entirely. *Id.* This is a change of key circumstances that warrants immediate discontinuation of the TRO in place, or at least the Removal Request. *See Franklin Twp. Sewerage Auth. v. Middlesex Cnty. Utilities Auth.*, 787 F.2d 117, 121 (3d Cir. 1986) (whether the movant has made a showing that changed circumstances warrant the discontinuation of the order is a key factor for the Court to consider).

Plaintiff has not disputed the fact that Defendants have removed all Disputed Statements but completely ignored this factual change in the Response. Now the core dispute before the Court is: <u>whether a complete removal of Defendants' product listings is still justified when all Disputed Statements have been removed; if not, to what extent should this Court modify the TRO in effect.</u>

> **i.** ***Plaintiff's Rationale for Maintaining the Listing Removal Order is Purely Speculative without Any Factual Basis***

Plaintiff insisted that this removal was still warranted mainly because "Amazon reviews and performance ratings accrued during the time a listing contained false statements continue to influence the Amazon search algorithm." Dkt. No. 50 at *4. In making this statement, Plaintiff assumes that the Disputed Statements are material to influence customers' purchase decision and satisfaction, which in turn will influence Amazon search algorithm. Nevertheless, Plaintiff has not provided a single piece of evidence besides Plaintiff's self-testifying declaration to support this assumption, rendering this whole assertion unsubstantiated. *See* Declaration of Grandadam, Dkt. 50-3 at 2.

Whether the Disputed Statements are material and likely to influence a consumer's purchasing decision is a key element in the false advertising claim that Plaintiff must satisfy its burden of proof at a later stage. At this early stage, Plaintiff need not submit consumer surveys or expert testimony, but it must nonetheless offer some factual basis whether through customer feedback, empirical inference, or market indicators, that the Disputed Statements likely

influenced consumer behavior. *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 922 (3d Cir. 1990). Courts have refused preliminary injunctive relief where such a showing was absent. See *Derby Indus., Inc. v. Chestnut Ridge Foam, Inc.*, 202 F. Supp. 2d 818, 826 (N.D. Ohio 2002) (applying Third Circuit law) (denying preliminary injunction where plaintiff offered "no testimony on this point at the preliminary injunction hearing").

In this case, Plaintiff did not just fail to provide any factual support for its key assumption. Plaintiff did not even bother to elaborate how Amazon reviews and performance ratings accrued could lead to any unfair advantage for the Defendants. If Defendants' customers were satisfied with Defendants' products and did not find their performance falling short of promises, it would prove that the Disputed Statements are not material enough to constitute false advertising. On the other hand, if these reviews reveal that Defendants' products were not as good as they claimed, these negative reviews will only hurt Defendants' future sales, not to the detriment of Plaintiff.

In light of the above, Plaintiff's cited authorities all support Defendants' position that a complete removal of products that are not inherently defective or otherwise unlawful is not narrowly tailored to the alleged harm. Plaintiff has not provided any explanation as to why the removal request of the TRO is still justified, especially after the Disputed Language has all been removed. Therefore, the continuing delisting of Defendants' products manifests injustice to Defendants.

> **ii.** **_Removal of Product Listings is Unnecessary and Not Narrowly Tailored to Preserve Status Quo_**

To support the assertion that the TRO currently in place is narrowly tailored to preserve status quo, Plaintiff argues that the TRO is not a complete prohibition against Defendants from selling lawful and non-defective products but admitted that the TRO requires "all online marketplaces ... shall upon receipt of this Order, suspend, block, tombstone, and/or delete any

product listings identified by the Plaintiff as setting forth [a] literally false material claim …" Dkt. No. 50 at *4. Plaintiff goes on to suggest that Defendants could have created new product listings to sell the same Accused Products without the Disputed Statements. *Id.* Plaintiff's arguments understate the impact of the current TRO on Defendants and the practical difficulties for Defendants in creating new product listings for the same products.

Despite Plaintiff's denial, it is self-evident that the TRO requirement imposed on online marketplace will result in a *de facto* prohibition against Defendants from selling the Accused Products. As a matter of fact, all Defendants are sellers on Amazon, a platform that creates a unique product ASIN to identify a specific product listing of a seller. Joint Declaration at ¶6. The TRO, in effect, requires Amazon to block the ASIN that once contained the Disputed Statements, even after such statements were deleted. Joint Declaration at ¶5. All unsold Accused Products are stored as inventory at fulfillment centers of Amazon ("FBA"), marked by and linked to specific corresponding ASINs. Joint Declaration at ¶5. Because Amazon's system only processes orders placed for a specific ASIN, the blocking of these ASINS has rendered the inventory unsellable. Joint Declaration at ¶5. Creating a new product listing is not a viable solution and will still lead to inventory loss tied to the blocked ASINs, with the total value of affected goods exceeding $300,000 in aggregate value. Joint Declaration at ¶6. In addition, Defendants have to pay service fees to Amazon while these products are in its custody, even when the listings generate no sales. Joint Declaration at ¶6. Another product listing with a new ASIN will be treated as a new product listing, even if the underlying products are identical, which will not reverse or significantly reduce the inventory loss of Defendants. Joint Declaration at ¶6. Such losses are devastating to small-to-medium-sized businesses like Defendants. Joint Declaration at ¶6.

Given that Defendants have deleted all Disputed Statements, the continuing imposition of product removal is grossly disproportionate to any alleged harm caused by Disputed Statements and will not preserve status quo for all parties.

### iii. *Courts Have Broad Discretion to Modify TRO*

Defendants referred to 15 U.S.C. § 1116 and stated that "courts have broad discretion to grant injunctions to prevent violations of false advertising, according to principles of equity and upon such terms as the courts may deem reasonable" in the Emergency Motion. Dkt. No. 36 at *3. In the same paragraph, Defendants cited two Third Circuit false advertising cases that require narrow remedy tailored to enjoin sales of end products of alleged false statements. *Id*. (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 599 (3rd Cir. 2002) and *U.S. v. Vitasafe Corp.*, 345 F.2d 864, 870-71 (3rd Cir.1965)).

Plaintiff cited the same Third Circuit case – *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.* – in the Response, but the comparison is largely misplaced. The Third Circuit affirmed the preliminary injunction imposed by the District Court because the injunction was narrowly tailored to reach the alleged false claims. *Novartis Consumer Health, Inc*., 290 F.3d at 598 ("The preliminary injunction in this case prohibits [defendant] from: "(1) marketing and disseminating Mylanta Night Time Strength under that name; (2) using the designation 'Night Time' or 'Night Time Strength' on any antacid product; [and] (3) otherwise claiming, either explicitly or implicitly, in any packaging, advertising, or other promotional materials…") The injunction in *Novartis Consumer Health* did not require complete removal of the defendant's products, only targeting the product labels and claims in promotional materials. *Id.*

Other Third Circuit cases cited by Plaintiff [ECF No. 6 at *28-32] address the likelihood of success on the merits, to which Defendants will respond in subsequent filings. For the

7

purpose of this Emergency Motion, this Court need not rule on the merit of the case. The Court only needs to rule on the specific issue as to whether the TRO measure in place is the narrowest remedy possible to preserve status quo; if not, what modifications are justified and appropriate.

In the Response, Plaintiff questioned why Defendants could not find any supporting case law directly addressed the TRO of this case, but the answer is obvious: the injunctive relief requested by Plaintiff in this case is extraordinary and unprecedented. Even the injunctive relief affirmatively rejected in Third Circuit precedents is not nearly as broad as Plaintiff's request. *See e.g.*, *U.S. v. Vitasafe Corp.*, 345 F.2d 864, 870-71 (3rd Cir.1965) (holding that portion of injunction attempting to enjoin sales of vitamin capsules to any person to whom manufacturer had previously sent, prior to date of decree, any written matter making specified false claims, irrespective of whether sale was end product of such written matter or result of solicitation by proper post-decree literature, was beyond permissible limits and must be vacated.)

Similar to *Vitasafe Corp.*, sales subsequent to Defendants' deletion of Disputed Statements cannot be end product of such statements and therefore, should not be enjoined, while the injunctive relief sought in *Vitasafe Corp.* was limited to persons to whom the defendant had contacted prior to the date of decree, not extended to those who came across defendant's products after the disputed language was removed. In this case, Plaintiff does not dispute the fact that Defendants had voluntarily deleted Disputed Statements, but still insisted keeping the removal order in place, completing disregarding the binding Third Circuit ruling.

On the other hand, the modification requested by Defendants was specific and narrow, only asking the Court to reinstate the removed product listings from which the Disputed Statements had been removed. Dkt. No. 49-1. Defendants have not even asked for lifting of financial freeze. *Id.* Therefore, granting Defendant's modest modification request will be consistent with the principles of equity and reasonable in light of the new circumstances.

## CONCLUSION

The Removal Request in the TRO currently in effect should be modified to preserve the *status quo* and restore equity, particularly after Defendants have removed the Disputed Statements.

**WHEREFORE**, the Defendants jointly request this Court enter an order granting their Emergency Motion to Modify Temporary Restraining Order and for any further relief the Court deems appropriate.

Date: June 3, 2025

      /s/ Ge (Linda) Lei
Ge (Linda) Lei
Getech Law LLC
203 N. LaSalle St., Suite 2100,
Chicago, IL 60601
Attorney No. 6313341
Linda.lei@getechlaw.com
312-888-6633

/s/ Shaoyi Che
Shaoyi Che, Esq. (*Pro Hac Vice*)
Zhongyi Huang, Esq. (*Pro Hac Vice Forthcoming*)
YoungZeal LLP
9355 John W. Elliott Dr, Ste 25555, Frisco, TX 75033
Tel: (717) 440 3382
Che@yzlaw.com
Huang@yzlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of June 2025, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Western District of Pennsylvania, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

By:/s/ Ge (Linda) Lei
Ge (Linda) Lei