IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PROMIER PRODUCTS INC., <br><br> Plaintiff, <br><br> v. <br><br> GEAROZ, et al., <br><br> Defendants. | Civil Action No. 2:25-cv-00497 |

MEMORANDUM ORDER OF COURT

Robert J. Colville, United States District Judge

Presently before the Court are the following motions: a Motion for Preliminary Injunction (ECF No. 63) filed by Plaintiff, Promier Products Inc.; a Motion for Clarification and/or Motion for Reconsideration (ECF No. 76) filed by Plaintiff; and Motions to Modify the Temporary Restraining Order (ECF Nos. 36, 49) filed by various Defendants, as identified on the record.

I.   Factual Background and Procedural History

In the above-captioned action, Plaintiff brings claims for false advertising under the Lanham Act as well as unfair competition under Pennsylvania common law against a number of Defendants, who are mostly alleged to be Chinese nationals.[1] Compl., ECF No. 2. Plaintiff asserts that each of the Defendants is falsely advertising "the characteristics and/or qualities of . . . flashlights being advertised, offered for sale, sold, and/or distributed by Defendants." *Id.* at ¶ 2. Specifically, Plaintiff, a seller of flashlights, alleges that it accurately advertises its products' specifications, including the lumen output, while Defendants make false representations to

---

[1] The one hundred and fifty-three Defendants are identified in Schedule A of the Complaint (ECF No. 1). Several of the Defendants have been voluntarily dismissed by Plaintiff.

1

consumers about their products' lumen outputs. *Id.* at ¶¶ 25, 31. As detailed by Plaintiff, "[l]umens are the most commonly used unit of measure for total light output in portable lighting devices that emit directional light, such as flashlights." *Id.* at ¶ 26. In support of its allegations, Plaintiff submitted products from each of the Defendants for industry standard testing and provided a report which details that the actual lumen output of the tested products is below the lumen output advertised by Defendants. *Id.* at ¶ 39.

Along with the Complaint, Plaintiff filed a Motion (ECF No. 4) seeking a Temporary Restraining Order and a Preliminary Injunction. Prior to ruling on the Motion for a Temporary Restraining Order, the Court directed Plaintiff to show cause why this matter should not be dismissed or transferred due to improper venue and/or due to lack of personal jurisdiction. ECF No. 15. Plaintiff filed its Response to the Order to Show Cause on May 2, 2025. ECF No. 16.

The Court subsequently issued a Temporary Restraining Order (ECF No. 18) that, among other things, restrained Defendants from selling the allegedly falsely advertised products and froze assets held in Defendants' online storefronts. The Court also scheduled a show cause hearing on Plaintiff's preliminary injunction request. Prior to the hearing, several Defendants, as detailed on the record, filed Motions (ECF Nos. 36, 49) to Modify the Temporary Restraining Order. On June 16, 2025, after several continuances, the Court convened a hearing on Plaintiff's preliminary injunction request. *See* ECF No. 73. Counsel for Plaintiff appeared and presented argument in support of Plaintiff's request and a representative for Plaintiff testified on the record. Additionally, numerous Defendants appeared through counsel as identified on the record.

Plaintiff seeks a preliminary injunction order that is substantively consistent with the prior Temporary Restraining Order. Following the hearing, the Court entered an Order that the TRO issued by the Court was deemed to be expired and lifted the TRO pending the Court's decision on

Plaintiff's request for a preliminary injunction. *Id.* Plaintiff subsequently filed a Motion for Clarification and/or Motion for Reconsideration concerning the Court's Order. ECF No. 76.

For the reasons set forth below, the Court will deny Plaintiff's Motion for a Preliminary Injunction, deny Plaintiff's Motion for Clarification and/or Motion for Reconsideration, and dismiss as moot Defendants' Motions to Modify the Temporary Restraining Order.

## II.    Applicable Legal Standards

The court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65 (a)(1). With respect to the standard for the issuance of a preliminary injunction, the United States Court of Appeals for the Third Circuit has explained:

> The decision to issue a preliminary injunction is governed by a four-factor test:
>
>> To obtain an injunction, the plaintiffs had to demonstrate (1) that they are reasonably likely to prevail eventually in the litigation and (2) that they are likely to suffer irreparable injury without relief. If these two threshold showings are made the District Court then considers, to the extent relevant, (3) whether an injunction would harm the [defendants] more than denying relief would harm the plaintiffs and (4) whether granting relief would serve the public interest.

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3d Cir. 2013) (quoting *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002)). "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)). "[O]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, noncontested status of the parties." *Kos Pharms.*, 369 F.3d at 708 (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990)).

Under the Federal Rules of Civil Procedure, district courts are authorized to exercise personal jurisdiction over non-residents to the extent permissible under the law of the state in which the district court is located. Fed. R. Civ. P. 4(e); *North Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990). In exercising personal jurisdiction, the court must first ascertain whether jurisdiction exists under the forum state's long-arm jurisdiction statute and then determine whether the exercise of jurisdiction comports with the due process clause of the Fourteenth Amendment to the Constitution. *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 489-90 (3d Cir. 1985). This inquiry has been collapsed in Pennsylvania, as the Pennsylvania long-arm statute provides that: "the jurisdiction of the tribunals of this Commonwealth shall extend to all persons . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b); *Van Buskirk*, 760 F.2d at 490. The reach of the Pennsylvania long-arm statute is thus "coextensive" with the due process clause. *North Penn Gas*, 897 F.2d at 690. The due process clause permits the court to assert personal jurisdictional over a nonresident defendant who has "certain minimum contacts with [the forum] such that the maintenance of [a] suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted).

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) [defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)). The "paradigm" forums where a corporate defendant is at home are the corporate defendant's place of incorporation and its principal place of business. *BNSF Ry. Co.*, 137 S. Ct.

at 1558 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler*, 571 U.S. at 139 n.19). General jurisdiction has not been established in this case.

Specific jurisdiction is appropriate only if the plaintiff's cause of action arises out of a defendant's forum-related activities, "such that the defendant 'should reasonably expect being haled into court'" in that forum. *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Inc.,* 75 F.3d 147, 151 (3d Cir. 1996) (quoting *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The Third Circuit has explained the three-part analysis for specific jurisdiction. "First, the defendant must have 'purposefully directed [its] activities' at the forum. Second, the litigation must 'arise out of or relate to' at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel,* 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted). To find that a plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state, the Third Circuit requires "a closer and more direct causal connection than that provided by the but-for test." *Id.* However, the required causal connection is looser than the tort concept of proximate causation. *Id.* (citing *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 99-100 (3d. Cir. 2004)). The appropriate analysis is fact-intensive, focusing on the "reciprocity principle upon which specific jurisdiction rests" -- whether the defendant received the benefits and protections of a state's laws to the extent that it should, as a quid pro quo, submit to the burden of litigation in the state. *Id.* at 323.

As noted, each of the Defendants is alleged to be a foreign entity. Federal Rule of Civil Procedure 4(k)(2) provides:

> (2) Federal Claim Outside State-Court Jurisdiction. For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
>> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>>
>> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2). Accordingly, in order for a court to exercise personal jurisdiction over a foreign defendant pursuant to Fed. R. Civ. P. 4(k)(2):

> (1) there must be a claim arising under federal law; (2) the defendant must be beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the defendant must have sufficient contacts with the United States as a whole so that the court's exercise of personal jurisdiction over the defendant comports with the due process requirements of the Constitution or other federal law.

*Skold v. Galderma Labs., L.P.*, 99 F. Supp. 3d 585, 603 (E.D. Pa. 2015). "Rule 4(k)(2) was adopted to ensure that federal claims will have a U.S. forum if sufficient national contacts exist." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1295 (Fed. Cir. 2009) (citing Fed. R. Civ. P. 4(k)(2) advisory committee notes to 1993 amendment).

### III. Analysis

As to the first factor, likelihood of success on the merits, "a sufficient degree of success for a strong showing exists if there is a reasonable chance or probability[ ] of winning." *Xie v. GUANHE Home essentials*, No. 2:25-CV-00265, 2025 WL 1039233, at *2 (W.D. Pa. Apr. 8, 2025) (quoting *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 256 (3d Cir. 2020)). "Because Plaintiff will ultimately have to establish personal jurisdiction by a preponderance of the evidence, the precise question before the Court now is whether Plaintiff has established 'a reasonable

probability' that [Plaintiff] will be able to establish personal jurisdiction by a preponderance of the evidence." *Xie*, 2025 WL 1039233, at *2 (citing *Control Screening LLC v. Tech. Application & Prod. Co. (Tecapro), HCMC-Vietnam*, 687 F.3d 163, 167 (3d Cir. 2012)).

"In the context of e-commerce, 'the mere operation of a commercially interactive web site'—even if accessible in the relevant forum—is insufficient to establish minimum contacts and therefore personal jurisdiction." *Xie*, 2025 WL 1039233, at *2 (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003)). Rather, the plaintiff must show that that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state "by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id*.

At this juncture and on this record, Plaintiff has not met its burden of establishing a reasonable probability that it will eventually be able to establish by a preponderance of the evidence personal jurisdiction over the Defendants. Initially, the Court rejects any argument by Plaintiff that the maintenance of a commercial website through which Defendants advertise and sell products worldwide, including in Pennsylvania, alone is sufficient to establish minimum contacts. *See Xie*, 2025 WL 1039233, at *4 ("[T]he operation of an online storefront from which Pennsylvania residents can make purchases if they so choose—standing alone—is insufficient to establish minimum contacts with Pennsylvania."). In its briefing, Plaintiff heavily relies on this argument in support of personal jurisdiction, *see* ECF No. 6 at 13; *see also* ECF No. 16 at 10, 13, and it is one that has been roundly, and repeatedly, rejected by courts.

That said, Plaintiff does allege that each Defendant has sold a product into Pennsylvania. ECF No. 16 at 14. However, the only evidence offered in support of these sales are Declarations from Plaintiff's counsel providing that counsel themselves purchased products from each

7

Defendant. ECF No. 14; ECF No. 16, Ex. 3. Further, attached to these Declarations are screenshots of receipts for purchase. *Id.* While the Declarations detail that these purchases were shipped to Pennsylvania, the receipts for purchase have all identifying information removed, including the shipping address. Therefore, it appears likely to this Court that these screenshots were produced by Plaintiff or counsel for purposes of establishing jurisdiction. Such a practice is insufficient to establish personal jurisdiction:

> Moreover, the screenshots attached to the complaint do not reflect that these are arms-length sales. If [plaintiff] or its counsel or agents simply ordered these products to create personal jurisdiction, that doesn't work. *See Nifty Home Prods. Inc. v. Ladynana US*, No. 23-1332, 2024 WL 4987245, at *3 (3d Cir. Dec. 5, 2024) (finding, in context of review of district court's denying motion to vacate default judgment, a "colorable argument" that single sale from each defendant into Pennsylvania—set up by plaintiff in each instance—was insufficient to show purposeful availment); *Toys "R" Us, Inc.*, 318 F.3d 446 at 454-55 (two sales orchestrated by the plaintiff insufficient to establish personal jurisdiction because these two sales "appear to be the kind of 'fortuitous,' 'random,' and 'attenuated' contacts that the Supreme Court has held insufficient to warrant the exercise of jurisdiction"); *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1095 (9th Cir. 2023) (finding personal jurisdiction over defendants using their Amazon storefronts to make sales to residents in forum state, but requiring that such sales "must occur in the defendant's regular course of business").

*FORCEL MEDIA*, 2025 WL 1665586, at *2.

Outside of the above, Plaintiff makes general allegations that Defendants were and/*or* are systematically directing and/*or* targeting their business activities at consumers *in the United States, including Pennsylvania*.". ECF No. 2 at ¶ 7 (emphasis added). Further Plaintiff argues that Defendants have "offere[ed] for sale *and/or* [sold] falsely advertised products through their interactive Defendant Merchant Storefronts." ECF No. 6 at 14 (emphasis added). The Court finds this equivocal language to be telling. The Defendants sell products to U.S. customers, and possibly in Pennsylvania, which is in the U.S. The Defendants also offer to sell and/*or* sell their products to Pennsylvania residents. The second seemingly guarded allegation again, potentially, betrays

8

Plaintiff's true basis for asserting personal jurisdiction, Defendants' online storefronts. *See* ECF No. 6 at 12 ("Accordingly, this Court has personal jurisdiction over Defendants who have intentionally availed themselves of the opportunity to do business in Pennsylvania, and specifically in Allegheny County, Pennsylvania, through their fully interactive web sites to offer for sale and/*or* sell falsely advertised products." (emphasis added)); ECF No. 14 at ¶ 2 ("I . . . conducted an investigation to determine if the identified Defendants were and/or are currently offering for sale and/*or* selling falsely advertised products and whether each of the identified Defendants will ship and/*or* has actually shipped such products to the United States, *including customers specifically located in Pennsylvania*." (emphasis added)).[2]

At times, Plaintiff's briefing contains some arguably less equivocal assertions. *See* ECF No. 6 at 1 ("Defendants are knowingly and intentionally promoting, advertising, distributing, offering for sale, and selling falsely advertised flashlights throughout the United States, including within the Commonwealth of Pennsylvania"); *see also* ECF No. 6 at 20 ("All of the products being advertised with false claims which are the subject of this lawsuit were sold into Pennsylvania."). Of course, these assertions are preceded and followed by assertions that the Defendants are offering for sale and/or selling their products. Further, these less equivocal assertions are not actually set forth in Plaintiff's Complaint and they only appear in Plaintiff's briefing in support of its request for a TRO. The use of "and/or" must allow for the possibility of the "or" option, meaning that Plaintiff has essentially alleged that Defendants are subject to personal jurisdiction because they "regularly conduct, transact, [or] solicit business in Pennsylvania." ECF No. 2 at ¶ 6. Further, as stated above, the only evidence offered by Plaintiff that Defendant's products were

---

[2] *See also* ECF No. 6 at 13 ("Whether a defendant physically shipped falsely advertised products into Pennsylvania is not determinative of whether personal jurisdiction exists, as courts in this Circuit examine a given defendant's online interactions with consumers in considering whether a particular defendant has transacted business in the forum state.").

9

sold into Pennsylvania are Declarations from Plaintiff's counsel detailing that it purchased Defendant's products as well as screenshots of purchase receipts from Amazon in which all identifying information has been removed, including the purchase address.

As noted, maintenance of a nationally or globally available online storefront that merely advertises or offers products for sale to customers in Pennsylvania is not sufficient to establish minimum contacts.  Further, purchases of a defendant's products by plaintiff's counsel, in an attempt to create jurisdiction, is not sufficient for establishing personal jurisdiction.  Given the nature of its pleadings and arguments, it is, quite frankly, completely unclear whether Plaintiff intended to allege that each and every Defendant sold and shipped products into the Western District of Pennsylvania, outside of the one shipment made to Plaintiff's counsel.  Plaintiff's arguments and (most of) its averments tend to indicate that it did not, or at least that it believes that it does not matter whether it did or not.  Plaintiff is represented by sophisticated and experienced counsel, who is more than capable of clearly pleading the basis for personal jurisdiction in this case.  If, on information and belief, Plaintiff believed that each and every Defendant had sold products into this state, outside of a sale made to Plaintiff's counsel, Plaintiff should, and presumably would, have so stated, and done so unequivocally.

Plaintiff likewise fails to make a sufficient showing that it will be able to establish personal jurisdiction by a preponderance of the evidence under Rule 4(k)(2) as to all Defendants.  Under that Rule, a plaintiff must establish that the defendant is beyond the jurisdictional reach of any state court of general jurisdiction. Given the general allegations in Plaintiff's Complaint respecting sales into the U.S., it seems entirely likely that many of the Defendants, if not all of them, would be subject to jurisdiction in at least one forum.  While it is not clear that Pennsylvania is an appropriate forum, it is equally unclear, on this record, that Plaintiff is likely to establish by a

preponderance of the evidence that each of the Defendants is beyond the jurisdictional reach of any other state. Given that this is a threshold issue, the Court finds that the issuance of a preliminary injunction is not warranted.

Further, the Court agrees with the analysis set forth in the recent Memorandum Order entered in this District by Judge Ranjan in *FORCEL MEDIA*, wherein he discussed sincere concerns respecting misjoinder in a similar "Schedule A case." *See FORCEL MEDIA*, 2025 WL 1665586, at *2-4. In that case, Judge Ranjan explained:

> The Court questions the propriety of joinder of 103 defendants under Rule 20. Rule 20(a)(2) allows a plaintiff "to join all defendant sellers in one action if the claims arise out of the same transaction, occurrence, or series of transactions or occurrences." *Viking Arm AS v. P'hips & Unincorporated Ass'ns Identified on Schedule A*, No. 24-1566, 2024 WL 2953105, at *1 (N.D. Ill. June 6, 2024). Under Rule 21, the Court "may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.
>
> As courts in the Northern District of Illinois have "time and again" held in the context of similar Schedule A cases, "it is not enough for a plaintiff to simply allege that multiple defendants have infringed the same patent or trademark to meet Rule 20's requirements." *Estee Lauder Cosms. Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182, 187 (N.D. Ill. 2020). This is because, absent some sort of connection among the defendants, "one defendant's alleged infringement does not arise out of the same transaction, occurrence, or series of transactions of occurrences as another defendant's unrelated infringement." *Id.*

*FORCEL MEDIA*, 2025 WL 1665586, at *2.

"It is well established . . . that 'simply committing the same type of violation in the same way does not link defendants together for the purposes of joinder.'" *Viking Arm AS v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 24 C 1566, 2024 WL 2953105, at *2 (N.D. Ill. June 6, 2024) (quoting *Bose Corp. v. P'Ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 511, 514 (N.D. Ill. 2020)). Here, Plaintiff has only raised one allegation that "Defendants' sale of falsely advertised products gives rise to a plausible expectation that discovery will reveal that Defendants' actions all arise from the same transaction, occurrence, or

series of transactions.  Specifically, Defendant Merchant Storefronts share unique identifiers, such as descriptions, and similarities of the falsely advertised products offered for sale such as descriptions, product images, colors, shapes, and sizes, thus establishing a logical relationship between them and suggesting that the [D]efendants false advertisements arise out of the same transaction, occurrence, or series of transactions or occurrences." ECF No. 2 at ¶ 21.

   Here, the joinder allegations are far less substantial, and more hypothetical, than those raised in FORCEL MEDIA.  Therefore, the Court is, on this record, unconvinced that there is a connection between the Defendants, let alone one that is shared by all of them.  As noted by Judge Ranjan, courts in the Northern District of Illinois have routinely rejected arguments such as those raised by Plaintiff in support of joinder in this case.  *See id.* ("[E]xperience has shown that, while some individual defendants may operate several online stores, and while some individual defendants may coordinate with other defendants before or after the filing of the infringement action, rarely, if ever, have all defendants named in a Schedule A case worked together." (quoting *Dongguan Juyuan Precision Tech. Co., Ltd. v. The P'ship and Unincorporated Ass's Identified on Schedule A*, No. 24-cv-11301, ECF 5 at 1 (N.D. Ill. Nov. 4, 2024))).

   "[E]ven where joinder is permissible under Rule 20, a Court may exercise its discretion to sever or drop defendants if it concludes that doing so would further the interests of judicial economy without prejudice to any party."  *FORCEL MEDIA*, 2025 WL 1665586 at *4 (quoting *Malibu Media, LLC v. Surgent*, No. 12-3905, 2013 WL 1704289, at *2 (D.N.J. Apr. 19, 2013)). The Court again agrees with Judge Ranjan's holding in *FORCEL MEDIA* that "allowing joinder in this case would undermine judicial economy, is not in the interest of justice, and hampers the Court's ability to conduct meaningful review of the merits of the case," and finds that it is equally true in this case involving one hundred and fifty-three seemingly unrelated Defendants.  In short,

Plaintiff has not established a likelihood of success in this case because it appears that the Defendants cannot and/or should not be joined in this matter.

Finally, the Court finds that the balancing of the equities factor does not support the issuance of a preliminary injunction on this record. "[A] party bringing a claim under the Lanham Act is not entitled to a presumption of irreparable harm when seeking a preliminary injunction and must demonstrate that irreparable harm is likely." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 206 (3d Cir. 2014). The Court may issue a preliminary injunction "only upon a clear showing of a likelihood of irreparable harm." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192. 204 (3d Cir. 2014) (internal citations removed). Here, Plaintiff has made a sufficient showing, at least at this stage of the proceedings, that Defendants have falsely advertised their products and that such false statements are likely to harm Plaintiff's reputation and goodwill. Accordingly, it has sufficiently established irreparable harm at this stage.

That said, "[t]he more likely a plaintiff is to succeed on the merits, the less the balance of the equities needs to tip in her favor." *Xie*, 2025 WL 1039233, at *10. This Court has already concluded that Plaintiff has failed to establish a likelihood of success on the merits for two distinct and important threshold reasons. While Plaintiff is likely to sustain lost sales, which can clearly be remedied by the payment of damages, and potential loss of reputation and goodwill in the marketplace, the Court is not convinced that the scales tip in Plaintiff's favor at this time.

A preliminary injunction would impede Defendants from operating their businesses. *See FORCEL MEDIA*, 2025 WL 1665586 at *4 ("Also problematic is that the requested TRO not only enjoins Defendants from using Forcel's trademarks, but also directs the online marketplace platforms to freeze all accounts connected to Defendants' seller aliases. This relief would greatly interfere with Defendants' business operations and is far too broad, particularly given the number

13

of Defendants in this case and the lack of information about the proportion of non-infringing sales to infringing sales as to each Defendant."). Further, while Plaintiff has generally argued that the Defendants "are likely to move assets into offshore accounts outside of the Court's jurisdiction, there isn't a sufficient basis to support its 'all-encompassing claim that all of the listed defendants are . . . similarly situated in the context of possible asset transfers.'" *Id.* at *5 (quoting *Tang v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 21-14431, 2022 WL 1664116, at *3 (S.D. Fla. Feb. 28, 2022)). In a case where it is possible, if not likely, that this Court lacks jurisdiction over the Defendants and that the Defendants cannot be properly joined, the Court finds that the relief sought by way of the preliminary injunction request represents the greater of the harms. Accordingly, this factor weighs in favor of denying Plaintiff's request for a preliminary injunction.

## Conclusion and Order of Court

For the reasons discussed above, Plaintiff's request for a preliminary injunction (ECF No. 63) is denied. It is further ordered that Plaintiff's Motion for Clarification and/or Motion for Reconsideration (ECF No. 76) is denied and that Defendants' Motions to Modify the Temporary Restraining Order (ECF Nos. 36, 49) are dismissed as moot. To the extent that this holding is in any way inconsistent with the Court's issuance of a TRO, this Memorandum Order may be construed as one reconsidering whether the issuance of a TRO was appropriate.

Given this Court's ruling, to the extent Plaintiff's counsel has not done so, it shall immediately notify the online platforms identified by Plaintiff that the TRO in this matter was deemed expired and lifted by the Court and that the Court has denied Plaintiff's request for a preliminary injunction.[3]

---

[3] The Court previously ordered Plaintiff to notify the relevant online platforms of the expiration of the TRO in this matter. ECF No. 73. Subsequent to that order, Plaintiff filed its Motion for Clarification and/or Motion for

Plaintiff is hereby ordered to show cause as to why this case should not be severed or dismissed for misjoinder by July 29, 2025.  In the alternative, Plaintiff may file an amended complaint by the same date in an attempt to cure the deficiencies discussed in this Memorandum Order.  Plaintiff shall serve this Memorandum Order on all remaining Defendants.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: July 8, 2025

cc: All counsel of record

---

Reconsideration.  In the responses to said Motion, Defendants have notified the Court that Plaintiff has failed to notify the relevant online platforms of the expiration of the TRO.  ECF No. 85 at 2.